IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE MEDICAL PROTECTIVE COMPANY      CIVIL ACTION
and PRINCETON INSURANCE COMPANY,

           Plaintiffs,             Case No.   3:23-cv-235

     v.

LAUREL PEDIATRIC ASSOCIATES, INC.,
JOHNSTOWN PEDIATRIC ASSOCIATES, INC.,
and JOHNNIE W. BARTO, M.D.,

           Defendants.

## **COMPLAINT FOR DECLARATORY JUDGMENT**

AND NOW, come the Plaintiffs, The Medical Protective Company ("MedPro") and Princeton Insurance Company ("Princeton"), by and through their counsel, Houston Harbaugh, P.C., and hereby file the within Complaint for Declaratory Judgment.

### **Nature of Action**

1.      This an action to obtain a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the parties' rights and obligations under multiple years of insurance policies issued by MedPro and Princeton to Laurel Pediatric Associates, Inc. ("Laurel"), Johnstown Pediatric Associates, Inc. ("Johnstown Pediatric"), and Johnnie W. Barto, M.D. with respect to an underlying action seeking damages arising out of sexual conduct perpetrated by Dr. Barto.

2.      Specifically, MedPro and Princeton seek a declaration that they do not owe any duty to defend or duty to indemnify Laurel, Johnstown Pediatric, and Dr. Barto with respect to the underlying action.

### The Parties

3.      MedPro is an insurance company that is incorporated in the state of Indiana, and which has its principal place of business at 5814 Reed Road, Fort Wayne, Indiana 46835.

4.      Princeton is an insurance company that is incorporated in the state of New Jersey, and which has its principal place of business at 746 Alexander Road, Princeton, New Jersey 08540.

5.      Laurel is a pediatric healthcare provider that is incorporated in the Commonwealth of Pennsylvania, and which has its principal place of business at 323 Budfield Street, Johnstown, Pennsylvania 15904.

6.      Johnstown Pediatric is a pediatric healthcare provider that is incorporated in the Commonwealth Pennsylvania, and which has its principal place of business at 323 Budfield Street, Johnstown, Pennsylvania 15905.

7.      Johnnie W. Barto, M.D. is an adult individual who is domiciled and resides in the Commonwealth of Pennsylvania, and who is currently incarcerated at SCI Waymart at 11 Fairview Drive, Waymart, Pennsylvania 18472.

### Jurisdiction and Venue

8.      This Court has authority to declare the rights of MedPro and Princeton under 28 U.S.C. §§ 2201 and 2202.

9.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), as complete diversity exists among the parties and the amount in controversy exceeds $75,000.00.

10.     Venue is proper in the Western District of Pennsylvania as two defendants reside in this district, and a substantial part of the events giving rise to MedPro's and Princeton's claims occurred in this district.  *See* 28 U.S.C. § 1391(b).

## The Underlying Action

11.    On May 14, 2019, certain minors filed a lawsuit captioned *Jane KW Doe, et al. v. Laurel Pediatric Associates, Inc., DLP Conemaugh Memorial Medical Center, LLC, and Johnnie W. Barto, M.D.* at Case No. 2019-2172 in the Court of Common Pleas of Cambria County, Pennsylvania ("the Underlying Action").

12.    As of the date of this Complaint for Declaratory Judgment, the Complaint in the Underlying Action has been amended on four occasions to add additional plaintiffs, additional defendants, and/or additional claims.  The Fourth Amended Complaint, together with the Notices of Adoption described below, are the operative pleadings at this time.  True and correct copies of the Fourth Amended Complaint and Notices of Adoption are attached hereto as Exhibit 1.

13.    Forty-five (45) minor Jane Does and John Does are named-plaintiffs to the Fourth Amended Complaint.

14.    Additionally, the Fourth Amended Complaint added Johnstown Pediatric as a defendant.

15.    Given the growing number of Dr. Barto's former patients with claims arising out of Dr. Barto's abuse, and in an attempt to avoid continuous amendments of the Complaint to add additional parties, the trial court directed that all further parties seeking to file claims arising from Dr. Barto's abuse file Notices of Adoption.

16.    By filing a Notice of Adoption, claimants raise and preserve their claims by adopting the allegations set forth in the Fourth Amended Complaint and alleging any additional facts that may be unique to them.

17.     As of the date of this Complaint, fifty-nine (59) minor Jane Does and John Does have filed Notices of Adoption, bringing the total number of Plaintiffs in the Underlying Action to 104.

18.     The Fourth Amended Complaint, together with the Notices of Adoption, allege that, between 1990 and 2018, Plaintiff-minors were patients at Laurel and/or Johnstown Pediatric and received medical treatment from Dr. Barto.

19.     Plaintiffs further allege that, during the course of these appointments, Dr. Barto engaged in certain sexual misconduct towards Plaintiff-minors.

20.     The Plaintiffs further allege that, as Dr. Barto's employers, Laurel and Johnstown Pediatric knew of Dr. Barto's propensity to sexually abuse and molest minors and of his actual sexual abuse and molestation of his minor patients.

21.     More specifically, the Underlying Action alleges that Dr. Barto admitted to abusing his first patient-victim when he was twenty-six years old and at about the same time that he received his medical license.  As alleged in the Underlying Action, "there was not a single time at which [Dr.] Barto worked for [Laurel and/or Johnstown Pediatric] as a licensed Physician between 1974 and 2018, when he was *not* abusing his minor patients."

22.     The Underlying Action alleges that patients and their parents raised alarms with Laurel and Johnstown Pediatric about Dr. Barto's abuse of his patients.

23.     The Plaintiffs also allege that Dr. Barto's medical license was suspended in March 2000, and was thereafter erroneously reinstated.

24.     The Underlying Action alleges that, despite their knowledge of Dr. Barto's propensities and prior sexual abuse/molestation of minors – given their prior contact with police, parents' complaints and reports related to the same, and the suspension of Dr. Barto's medical

4

license – Laurel and Johnstown Pediatric did not investigate Dr. Barto, did not warn Plaintiffs about Dr. Barto, did not take any steps to protect Plaintiff-minors from Dr. Barto, and otherwise concealed Dr. Barto's abuse of his patients.

25.    The Underlying Action alleges that in March 2018, as the result of Dr. Barto's abuse of his patients, he was charged with multiple counts of aggravated indecent assault, indecent assault, corruption of minors, unlawful contact with a minor, and endangering the welfare of children.

26.    The Underlying Action alleges that the Attorney General of Pennsylvania brought an additional sixty-nine charges against Dr. Barto, arising from twenty-nine victims who documented his abuse back to the early 1990s.

27.    The Underlying Action alleges that Dr. Barto ultimately pled no contest to the charges against him, and received a sentence of 79 to 158 years of incarceration.  His medical license was, likewise, suspended.

28.    The Underlying Action raises the following claims against Laurel, Johnstown Pediatric, and Dr. Barto:

    a.    Count I alleges that Dr. Barto sexually abused Plaintiff-minors, and that Laurel and Johnstown Pediatric, as Dr. Barto's employers, are vicariously liable for such sexual abuse.

    b.    Count II alleges that Laurel and Johnstown Pediatric negligently hired and retained Dr. Barto in that they hired and retained him despite knowing of his propensity to sexually abuse and molest minors.

    c.    Count III alleges that Laurel and Johnstown Pediatric negligently supervised Dr. Barto.

d.    Count V alleges that Laurel and Johnstown Pediatric negligently misrepresented Dr. Barto's history of abusing and molesting minors, the danger that he presented to minors, and the precautions that Laurel and Johnstown Pediatric took (or failed to take) to ensure their patients' safety.

e.    Count VII alleges that Dr. Barto intentionally inflicted emotional distress upon Plaintiff-minors by sexually abusing them, and that Laurel and Johnstown Pediatric intentionally inflicted emotional distress upon Plaintiff-minors by allowing Dr. Barto to treat them despite knowing of his propensity to sexually abuse and molest minors.

f.    Count IX alleges that Dr. Barto, Laurel, and Johnstown Pediatric conspired to protect their reputations and finances by concealing Dr. Barto's propensity to sexually abuse and molest minors, and his history of sexually abusing and molesting minors.

g.    Count X alleges that Dr. Barto was medically negligent in sexually abusing Plaintiff-minors, and that Laurel and Johnstown Pediatric were medically negligent in allowing Dr. Barto to treat, and thereby sexually abuse, Plaintiff-minors.

h.    Count XI alleges that Dr. Barto assaulted Plaintiff-minors when he sexually abused them.

i.    Count XII alleges that Dr. Barto battered Plaintiff-minors when he sexually abused them.

j.    Count XIV alleges that Laurel and Johnstown Pediatric negligently failed to implement proper policies and procedures despite knowing of Dr. Barto's

propensity to sexually abuse and molest minors, negligently failed to train

Dr. Barto and other staff in light of Dr. Barto's propensity to sexually abuse

and molest minors, negligently credentialed Dr. Barto despite knowing of

his propensity to sexually abuse and molest minors, and negligently failed

to evaluate Dr. Barto's credentials upon learning of his sexual abuse and

molestation of minors.

29.     Each Plaintiff in the Underlying Action seeks in excess of $50,000.00, including

compensatory damages, punitive damages, interest, and costs of suit.

**Laurel's Submission of Claims to the MCARE Fund**

30.     Laurel gave notice of the Underlying Action to the Medical Care Availability and

Reduction of Error Fund ("the MCARE Fund"), and sought a defense and indemnification for the

claims set forth against it in the Underlying Action pursuant to 40 P.S. § 1303.715.

31.     On January 5, 2022, the MCARE Fund advised Laurel it would be assigning

defense counsel pursuant to § 1303.715 "[t]o the extent the underlying Fourth Amended Complaint

could arguably be construed as alleging a violation of medical standards applicable to the

chaperoning of pediatric examinations."

32.     As to all remaining claims in the Underlying Action, the MCARE Fund denied a

defense and indemnification to Laurel on the basis that the Underlying Action did not allege a

"medical professional liability claim" for which Laurel was entitled to a defense and

indemnification from the MCARE Fund.

**MedPro Policy No. 558947**

33.    MedPro issued Policy No. 558947 to Dr. Barto, which was effective during the following policy periods:

      a.      April 1, 1989 to April 1, 1990;

      b.      April 1, 1990 to April 1, 1991;

      c.      April 1, 1991 to April 1, 1992;

      d.      April 1, 1992 to April 1, 1993;

      e.      April 1, 1993 to April 1, 1994;

      f.      January 1, 2003 to January 1, 2004;

      g.      January 1, 2004 to January 1, 2005; and

      h.      January 1, 2005 to January 1, 2006.

True and correct copies of MedPro Policy No. 558947 for each policy period are attached hereto as Exhibits 2 through 9, respectively.    These policies are collectively referred to as "the MedPro-Barto Policies."

34.    All policy periods of Policy No. 558947 from April 1, 1989 to April 1, 1994 have limits of $200,000.00 for "One Occurrence" and $600,000.00 for "Annual Aggregate."

35.    All policy periods of Policy No. 558947 from January 1, 2003 to January 1, 2006 have limits of $500,000.00 for "One Occurrence" and $1,500,000.00 for "Annual Aggregate."

36.    All policy periods of Policy No. 558947 contain the following insuring agreement and exclusions:

      In Consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

8

A.    In any claim for damages, at any time filed, based on professional services rendered or which should have been rendered, by the Insured or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession during the term of this policy; except this policy does not cover:

\*\*\*

2.    payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act;

\*\*\*

6.    any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured.

\*\*\*

37.    All policy periods of Policy No. 558947 contain the following provision, as amended by Endorsement No. 424:

In Consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

\*\*\*

E.    Except as respects the cost of defense provided under paragraph B and the premium on any bond furnished under paragraph C, the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such inquiry or damage, or (d) the number of policy years involved, the Company's liability for damages shall not exceed the stated amount for any one occurrence and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate.

Furthermore, for the purposes of determining the Company's liability, the following shall be considered as arising from one occurrence:

a)    all injury resulting from a series of acts or omissions in rendering professional services to one person and

9

b)    all injury arising out of continuous or repeated exposure to substantially the same general conditions.

\*\*\*

38.    All policy periods of Policy No. 558947 from January 1, 2003 to January 1, 2006 contain Endorsement No. 289, which provides:

### PENNSYLVANIA SECTION 715 ENDORSEMENT

The following exclusion is added to the policy:

Payment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to defend and pay damages pursuant to 40 P.S. § 1303.715, as well as any amendment or extensions thereto.

The following sentence is added to Paragraph B:

Furthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto.

All other terms and conditions of the policy remain unchanged.

\*\*\*

### MedPro Policy No. C44159

39.    MedPro issued Policy No. C44159 to Laurel, which was effective during the following policy periods:

a.    January 1, 2003 to January 1, 2004;

b.    January 1, 2004 to January 1, 2005; and

c.    January 1, 2005 to January 1, 2006.

True and correct copies of MedPro Policy No. C44159 for each policy period are attached hereto as Exhibits 10 through 12, respectively.  These policies are collectively referred to as the "MedPro-Laurel Policies."

40.    All policy periods of Policy No. C44159 have limits of $500,000.00 for "One Occurrence" and "$1,500,000.00" for "Annual Aggregate."

41.    All policy periods of Policy No. C44159 have the following insuring agreement and exclusions:

> In Consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured,
>
>> A.    In any claim for damages, at any time filed, based on professional services rendered or which should have been rendered, by the insured or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession during the term of this policy; EXCEPT this policy does not cover
>>
>> ***
>>
>> 2.    payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act;
>>
>> ***
>>
>> 5.    any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured.
>>
>> ***

42.    All policy periods of Policy No. C44159 contain the following provision, as amended by Endorsement No. 425:

> In Consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and other terms of this policy,

the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

\*\*\*

E.      Except as respects the cost of defense provided under paragraph B and the premium on any bond furnished under paragraph C, the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage or (d) the number of policy years involved, the Company's liability for damages shall not exceed the stated amount for any one occurrence and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate.

Furthermore, for the purposes of determining the Company's liability, the following shall be considered as arising from one occurrence:

a)      all injury resulting from a series of acts or omissions in rendering professional services to one person and

b)      all injury arising out of continuous or repeated exposure to substantially the same general conditions.

\*\*\*

43.      All policy periods of Policy No. C44159 contain Endorsement No. 289, which

provides:

### PENNSYLVANIA SECTION 715 ENDORSEMENT

The following exclusion is added to the policy:

Payment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to defend and pay damages pursuant to 40 P.S. § 1303.715, as well as any amendment or extensions thereto.

The following sentence is added to Paragraph B:

Furthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto.

12

All other terms and conditions of the policy remain unchanged.

\*\*\*

### Princeton Policy No. 37001767

44.    Princeton issued Policy No. 37001767 to Johnstown Pediatric, which was effective during the following policy periods:

      a.    January 1, 1997 to January 1, 1998;

      b.    January 1, 1998 to January 1, 1999;

      c.    January 1, 1999 to January 1, 2000; and

      d.    January 1, 2000 to June 1, 2000.

True and correct copies of Princeton Policy No. 37001767 for each policy period are attached hereto as Exhibits 13 through 16, respectively.    These policies are referred to as "the Princeton-Johnstown Policies."

45.    All policy periods for Policy No. 37001767 from January 1, 1997 to January 1, 1999 have limits of $300,000.00 for each "medical incident" and $900,000.00 for annual aggregate.

46.    All policy periods for Policy No. 37001767 from January 1, 1999 to June 1, 2000 have limits of $400,000.00 for each "medical incident" and $1,200,000.00 for annual aggregate.

47.    All policy periods of Policy No. 37001767 list Dr. Barto on the Professional Liability Schedule under Coverage M.

48.    All policy periods of Policy No. 37001767 list only Johnstown Pediatric on the Professional Liability Schedule under Coverage N.

49.    All policy periods of Policy No. 37001767 define "you" and "your" as referring to the Named Insured shown in the Declarations, *i.e.*, Johnstown Pediatric.

50.    All policy periods of Policy No. 37001767 contain the following insuring agreement:

**I.    COVERAGE**

We agree with you as follows:

**Coverage M – Individual Professional Liability**

We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. The injury must be caused by a "medical incident" arising out of your supplying or failure to supply professional services during the policy period stated on the Declarations of this policy.

**Coverage N – Partnership, Association, or Corporation Professional Liability**

We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. This injury must be caused by a "medical incident" arising out of the supplying of or failure to supply professional services by you or anyone for whose professional acts or whose failure to act you are legally responsible during the policy period stated on the Declarations of this policy.

We have the right and duty to defend any "suit" against you seeking payment for injury. We will do this even if any of the charges of the "suit" are groundless, false or fraudulent. We will investigate any claim or "suit" as we feel appropriate. We will settle any claim or "suit" as we deem appropriate. Our payment of the limit of liability ends our duty to defend or settle.

***

51.    All policy periods of Policy No. 37001767 contain an exclusion providing that "[t]his insurance does not apply for: (a) injury resulting from your performance of a criminal act."

52.     All policy periods of Policy No. 37001767 contain the following endorsement:

## DAMAGES EXCLUSION

This endorsement changes all Coverage Forms that are part of this policy.

<u>HOW YOUR POLICY IS CHANGED</u>

This endorsement adds the following to the exclusions section:

This insurance does not apply to

fines, penalties, or taxes, or punitive, exemplary, trebled, or multiplied damages, or amounts which may be deemed uninsurable under the law to which this policy shall be construed, or the return of or restitution of fees, profits, or charges for services rendered.

***

53.     All policy periods of Policy No. 37001767 contain the following provisions:

## III.    PERSONS INSURED

Each of the following is insured under this insurance to the extent set forth below:

(a)     Under Individual Professional Liability

The word "you" means each individual named in the schedule.

(b)     Under Partnership, Corporation, or Professional Association Professional Liability

The word "you" means the partnership, corporation, or professional association named in the schedule and any of its members with respect to the acts of others or their failure to act, provided that no member of the partnership, corporation, or professional association shall have liability insurance for his or her personal acts of a professional nature under this policy.

***

15

54.    All policy periods of Policy No. 37001767 contain the following provisions:

**IV.    LMITS OF LIABILITY**

**Coverage M – Individual Professional Liability**

The total limit of our liability during the policy year for all injury to which this insurance applies shall not exceed the limit of liability stated in the schedule as aggregate.

Subject to the provision above regarding aggregate, the total limit of our liability during the policy year for all injury to which this insurance applies in connection with any one "medical incident" shall not exceed the limit of liability stated in the schedule as "each medical incident."

Such limits of liability shall apply separately to each insured.

**Coverage N – Partnership, Association, or Corporation Professional Liability**

Regardless of the number of insureds under this insurance or the number of claims made or "suits" brought, the total limit of our liability is as follows:

The total limit of our liability during the policy year for all injury to which this insurance applies shall not exceed the limit of liability stated in the schedule as aggregate.

Subject to the provision above regarding aggregate, the total limit of our liability during the policy year for all injury to which this insurance applies in connection with any one "medical incident" shall not exceed the limit of liability stated in the schedule as applicable to each "medical incident."

***

55.    All policy periods of Policy No. 37001767 contain the following provisions:

**XI.    ADDITIONAL DEFINITIONS**

When used in reference to this insurance (including endorsements forming a part of this policy):

**"medical incident"** means any act or failure to act:

**(a)**    Individual Professional Liability – (1) in the furnishing of the professional service by you, any employee of yours, or any person acting under your personal direction, control or supervision, or (2) in

16

your service as a member of a formal accreditation, standards review or similar professional board or committee

**(b)**  Partnership, Association, or Corporation Professional Liability – in the furnishing of professional service by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision.

Any such act or failure to act, together with all related acts or failures to act in the furnishing of such services to any one person shall be considered one **"medical incident."**

\*\*\*

## Princeton Policy No. 37002795

56.    Princeton issued Policy No. 37002795 to Laurel, which was effective during the following policy periods:

a.    June 1, 2000 to January 1, 2001;

b.    January 1, 2001 to January 1, 2002; and

c.    January 1, 2002 to January 1, 2003.

True and correct copies of Princeton Policy No. 37002795 for each policy period are attached hereto as Exhibits 17 through 19, respectively.   These policies are referred to as the "Princeton-Laurel Policies."

57.    The policy period for Policy No. 37002795 from June 1, 2000 to January 1, 2001 has limits of $400,000.00 for each "medical incident" and $1,200,000.00 for annual aggregate.

58.    All policy periods for Policy No. 37002795 from January 1, 2001 to January 1, 2003 have limits of $500,000.00 for each "medical incident" and $1,500,000.00 for annual aggregate.

59.    All policy periods of Policy No. 37002795 list Dr. Barto on the Professional Liability Schedule under Coverage M.

60.    All policy periods of Policy No. 37002795 list only Laurel on the Professional Liability Schedule under Coverage N.

61.    All policy periods of Policy No. 37002795 define "you" and "your" as referring to the Named Insured shown in the Declarations, *i.e.*, Laurel.

62.    All policy periods of Policy No. 37002795 contain the following insuring agreement:

**I.    COVERAGE**

We agree with you as follows:

**Coverage M – Individual Professional Liability**

We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. The injury must be caused by a "medical incident" arising out of your supplying or failure to supply professional services during the policy period stated on the Declarations of this policy.

**Coverage N – Partnership, Association, or Corporation Professional Liability**

We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. The injury must be caused by a "medical incident" arising out of the supplying of or failure to supply professional services by you or anyone for whose professional act or whose failure to act you are legally responsible during the policy period stated on the Declarations of this policy.

We have the right and duty to defend any "suit" against you seeking payment for injury. We will do this even if any of the charges of the "suit" are groundless, false or fraudulent. We will investigate any claim or "suit" as we feel appropriate. We will settle any claim or "suit" as we deem appropriate. Our payment of the limit of liability ends our duty to defend or settle.

***

63.    All policy periods of Policy No. 37002795 contain an exclusion providing that "[t]his insurance does not apply for: (a) injury resulting from your performance of a criminal act."

18

64.     All policy periods of Policy No. 37002795 contain the following endorsement:

## DAMAGES EXCLUSION

This endorsement changes all Coverage Forms that are part of this policy.

<u>HOW YOUR POLICY IS CHANGED</u>

This endorsement adds the following to the exclusions section:

This insurance does not apply to

fines, penalties, or taxes, or punitive, exemplary, trebled, or multiplied damages, or amounts which may be deemed uninsurable under the law to which this policy shall be construed, or the return of or restitution of fees, profits, or charges for services rendered.

***

65.     All policy periods of Policy No. 37002795 contain the following provisions:

## III.     PERSONS INSURED

Each of the following is insured under this insurance to the extent set forth below:

(a)     Under Individual Professional Liability

The word "you" means each individual named in the schedule.

(b)     Under Partnership, Corporation, or Professional Association Professional Liability

The word "you" means the partnership, corporation, or professional association named in the schedule and any of its members with respect to the acts of others or their failure to act, provided that no member of the partnership, corporation, or professional association shall have liability insurance for his or her personal acts of a professional nature under this policy.

***

19

66.    All policy periods of Policy No. 37002795 contain the following provisions:

**IV.    LIMITS OF LIABILITY**

**Coverage M – Individual Professional Liability**

The total limit of our liability during the policy year for all injury to which this insurance applies shall not exceed the limit of liability stated in the schedule as aggregate.

Subject to the provision above regarding aggregate, the total limit of our liability during the policy year for all injury to which this insurance applies in connection with any one "medical incident" shall not exceed the limit of liability stated in the schedule as "each medical incident."

Such limits of liability shall apply separately to each insured.

**Coverage N – Partnership, Association, or Corporation Professional Liability**

Regardless of the number of insureds under this insurance or the number of claims made or "suits" brought, the total limit of our liability is as follows:

The total limit of our liability during the policy year for all injury to which this insurance applies shall not exceed the limit of liability stated in the schedule as aggregate.

Subject to the provision above regarding aggregate, the total limit of our liability during the policy year for all injury to which this insurance applies in connection with any one "medical incident" shall not exceed the limit of liability stated in the schedule as applicable to each "medical incident."

***

67.    All policy periods of Policy No. 37002795 contain the following provisions:

**XI – ADDITIONAL DEFINITIONS**

When used in reference to this insurance (including endorsements forming a party of this policy):

**"medical incident"** means any act or failure to act:

**(a)**    Individual Professional Liability – (1) in the furnishing of the professional service by you, any employee of yours, or any person acting under your personal direction, control or supervision, or (2) in

20

> your service as a member of a formal accreditation, standards review or similar professional board or committee
>
> **(b)**    Partnership, Association, or Corporation Professional Liability – in the furnishing of professional services by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision.
>
> Any such act or failure to act, together with all related acts or failures to act in the furnishing of such services to any one person shall be considered one **"medical incident."**

***

### **<u>Tenders</u>**

68.    Laurel, Johnstown Pediatric, and Dr. Barto have tendered their defenses in the Underlying Action to MedPro and/or Princeton under their respective insurance policies.

69.    MedPro and Princeton have been defending Laurel, Johnstown Pediatric, and Dr. Barto in the Underlying Action subject to a complete reservation of all rights under the above-referenced policies.

70.    MedPro and Princeton assert that they do not owe any of the Defendants a duty to defend in the Underlying Action, and that they do not owe any of the Defendants a duty of indemnification with respect to any judgment that may be entered in the Underlying Action.

71.    Accordingly, a case and/or controversy exists as to MedPro's and Princeton's obligations under the above-referenced insurance policies issued to the Defendants with respect to the claims set forth in the Underlying Action.

72.    MedPro and Princeton, therefore, file this Declaratory Judgment to resolve their obligations under their respective insurance policies.

21

## Count I

### No Duties to Defend and Indemnify Because Underlying Action Does Not Allege Professional Services

*The Medical Protective Company v. Laurel Pediatric Associates, Inc. and Johnnie W. Barto, M.D.*

73.    MedPro hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

74.    The insuring clauses of the MedPro-Barto Policies and the MedPro-Laurel Policies afford coverage "in any claim for damages … based on professional services rendered or which should have been rendered, by the Insured any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession during the term of this policy".

75.    Each of the injury-causing acts and omissions alleged in the Underlying Action do not qualify as the rendering of, or failure to render, professional services, as no such act or omission involved the application of a medical skill associated with medical training, but instead involve sexual abuse perpetrated by Dr. Barto.

76.    As a result, none of the claims in the Underlying Action trigger the insuring clauses of the MedPro-Barto Policies and the MedPro-Laurel Policies.

77.    Accordingly, MedPro does not owe Laurel or Dr. Barto any duty to defend them in the Underlying Action, and does not owe Laurel or Dr. Barto any duty to indemnify them against any judgment that may be entered in the Underlying Action.

WHEREFORE, MedPro respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    MedPro does not owe duties to defend Dr. Barto and Laurel in the Underlying Action;

2.      MedPro does not owe Dr. Barto and Laurel duties to indemnify them against any

judgment entered in the Underlying Action.

## Count II

**No Duties to Defend and Indemnify Because Underlying Action Does Not Allege
Professional Services**

*Princeton Insurance Company v. Laurel Pediatric Associates, Inc., Johnstown Pediatric
Associates, Inc., and Johnnie W. Barto, M.D.*

78.      Princeton hereby incorporates the allegations of Paragraph 1 through Paragraph 72,

above, as if set forth at length herein.

79.      The insuring clauses of Coverage M of the Princeton-Johnstown Policies and the

Princeton-Laurel Policies promise to pay amounts "you become obligated to pay as a result of

injury to which this insurance applies" which "must be caused by a 'medical incident' arising out

of your supplying or failure to supply professional services during the policy period stated on the

Declarations of this policy."  .

80.      The insuring clauses of Coverage N of the Princeton-Johnstown Policies and the

Princeton-Laurel Policies promise to pay amounts "you become legally obligated to pay a result

of injury to which this insurance applies" which "must be caused by a 'medical incident' arising

out of the supplying of or failure to supply professional services by you or anyone for whose

professional acts or whose failure to act you are legally responsible during the policy period stated

in the Declarations of this policy.".

81.      For purposes of Coverage M, the Princeton-Johnstown Policies and the

Princeton-Laurel Policies define "medical incident" as "any act or failure to act (1) in the

furnishing of the professional service by you, any employee of yours, or any person acting under

your personal direction, control or supervision, or (2) in your service as a member of a formal accreditation, standards review or similar professional board or committee."

82.    For purposes of Coverage N, the Princeton-Johnstown Policies and the Princeton-Laurel Policies define "medical incident" as "any act or failure to act by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision."

83.    The Underlying Action does not allege injury caused by a "medical incident" arising out of the supplying of or failure to supply professional services, or any acts or failures to act in the furnishing of the professional services, but instead involve sexual abuse perpetrated by Dr. Barto.

84.    As a result, none of the claims in the Underlying Action trigger any of the Princeton policies' insuring clauses.

85.    Accordingly, Princeton does not owe Laurel, Johnstown Pediatric, or Dr. Barto any duty to defend them in the Underlying Action, and does not owe Laurel, Johnstown Pediatric, or Dr. Barto any duty to indemnify them against any judgment that may be entered in the Underlying Action.

WHEREFORE, Princeton respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    Princeton does not owe duties to defend Laurel, Johnstown Pediatric, and Dr. Barto in the Underlying Action;

2.    Princeton does not owe Laurel, Johnstown Pediatric, and Dr. Barto duties to indemnify them against any judgment entered in the Underlying Action.

24

## Count III

**No Duties to Defend and Indemnify Because Exclusion for Damages in Consequence of Criminal Acts, Willful Torts, and/or Sexual Acts Applies**

*The Medical Protective Company v. Laurel Pediatric Associates, Inc. and Johnnie W. Barto, M.D.*

86.    MedPro hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

87.    The MedPro-Barto Policies and the MedPro-Laurel Policies provide "this policy does not cover … 2. payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act."

88.    All of the claims against Dr. Barto in the Underlying Action allege injury from his intentional sexual abuse of Plaintiff-minors or from Dr. Barto's intentional coverup of his sexual abuse of minors, as is evidenced, in part, by his 2018 convictions for intentional sexual acts against his minor patients and resultant incarceration of up to 158 years.

89.    All of the claims against Laurel in the Underlying Action allege injury as a consequence of Dr. Barto's sexual abuse, from its intentional failure to prevent Dr. Barto's sexual abuse, its intentional failure to protect Plaintiff-minors from Dr. Barto's sexual abuse, or its intentional coverup of Dr. Barto's sexual abuse of minors.

90.    All of the damages alleged in the Underlying Action against Dr. Barto and Laurel, therefore, are alleged to have been in consequence of the performance of a criminal act, willful tort, and/or sexual act.

91.    Accordingly, all of the claims in the Underlying Action against Laurel and Dr. Barto are excluded by Exclusion No. 2 in the MedPro-Barto Policies and the MedPro-Laurel Policies.

WHEREFORE, MedPro respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    MedPro does not owe duties to defend Laurel and Dr. Barto in the Underlying Action;

2.    MedPro does not owe Laurel and Dr. Barto duties to indemnify them against any judgment entered in the Underlying Action.

## Count IV

### No Duties to Defend and Indemnify Because Exclusion for Injury Resulting From The Performance of Criminal Acts Applies

*Princeton Insurance Company v. Laurel Pediatric Associates, Inc., Johnstown Pediatric Associates, Inc., and Johnnie W. Barto, M.D.*

92.    Princeton hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

93.    The Princeton-Johnstown Policies and Princeton-Laurel Policies provide "[t]his insurance does not apply for: (a) Injury resulting from your performance of a criminal act."

94.    All of the claims against Dr. Barto in the Underlying Action allege injury resulting from his intentional sexual abuse of Plaintiff-minors or from Dr. Barto's intentional coverup of his sexual abuse of minors, as is evidenced, in part, by his 2018 convictions for intentional sexual acts against his minor patients and resultant incarceration of up to 158 years.

95.    All of the claims against Laurel and Johnstown Pediatric in the Underlying Action allege injury from their intentional failure to prevent Dr. Barto's sexual abuse, their intentional failure to protect Plaintiff-minors from Dr. Barto's sexual abuse, or their intentional coverup of Dr. Barto's sexual abuse of minors.

96.     All injury alleged in the Underlying Action, therefore, is alleged to have resulted from Dr. Barto's performance of criminal acts.

97.     Accordingly, all of the claims in the Underlying Action are excluded by the Princeton-Johnstown Policies and the Princeton-Laurel Policies.

WHEREFORE, Princeton respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.     Princeton does not owe duties to defend Laurel, Johnstown Pediatric, and Dr. Barto in the Underlying Action;

2.     Princeton does not owe Laurel, Johnstown Pediatric, and Dr. Barto duties to indemnify them against any judgment entered in the Underlying Action.

## <u>Count V</u>

### No Duties to Defend and Indemnify to the Extent the MCARE Exclusion Applies

*The Medical Protective Company v. Laurel Pediatric Associates, Inc. and Johnnie W. Barto, M.D.*

98.     MedPro hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

99.     The allegations set forth herein in Count V are made only in the alternative, and are not, and shall not be construed as, any admission or concession by MedPro that the Underlying Action alleges that Laurel rendered and/or failed to render professional services or that the allegations in the Underlying Action in any way satisfy the insuring clauses of the MedPro-Barto and/or MedPro-Laurel Policies.

100.    By way of an endorsement, the MedPro-Barto Policies and MedPro-Laurel Policies add the following exclusion: "[p]ayment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to

defend and pay damages pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto."

101.    By way of an endorsement, the MedPro-Laurel Policies add the following to Paragraph B: "[f]urthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto."

102.    To the extent that the Underlying Action alleges that Laurel failed to properly supervise Dr. Barto by providing in-person supervision during pediatric appointments – MedPro pleads as much only in the alternative, and, for all other purposes, does not admit or concede the existence of such allegations – the MCARE Fund has assumed Laurel's defense in the Underlying Action with respect to such claim pursuant to § 1303.715 and is required to defend and indemnify Laurel with respect to such claim pursuant to § 1303.715.

103.    Any allegations in the Underlying Action that Laurel failed to properly supervise Dr. Barto by providing in-person supervision during pediatric appointments, therefore, do not trigger MedPro's duty to defend Laurel in the Underlying Action.

104.    MedPro, therefore, does not owe Laurel any duty to indemnify it for any judgment on a claim in the Underlying Action that Laurel failed to properly supervise Dr. Barto by providing in-person supervision during pediatric appointments, or on any other claim in the Underlying Action for which the MCARE Fund is required to indemnify Laurel under § 1303.715.

105.    Furthermore, to the extent that Dr. Barto and Laurel may be found to have rendered or failed to render professional services – which allegation is made only in the alternative and is denied for all other purposes – all claims against Dr. Barto and/or Laurel arising from such

rendering of or failure to render professional services qualify as "medical professional liability claims" for which the MCARE Fund is required by § 1303.715 to indemnify Dr. Barto and/or Laurel.

106.    Accordingly, MedPro does not owe Dr. Barto and Laurel any duty to indemnify them for any judgment in the Underlying Action with respect to any claim identified in Paragraph 105, above.

WHEREFORE, MedPro respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    Allegations in the Underlying Action that Laurel failed to properly supervise Dr. Barto by providing in-person supervision during pediatric appointments do not trigger MedPro's duty to defend Laurel in the Underlying Action under the MedPro-Laurel Policies.

2.    MedPro does not owe a duty to indemnify Laurel under the MedPro-Laurel Policies for any judgment on a claim in the Underlying Action that Laurel failed to properly supervise Dr. Barto by providing in-person supervision during pediatric appointments, or on any other claim in the Underlying Action for which the MCARE Fund is required to indemnify Laurel under § 1303.715.

3.    MedPro does not owe a duty to indemnify Dr. Barto and Laurel for any "medical professional liability claim," as that term is defined at 40 P.S. § 1303.103, on which judgment is entered in the Underlying Action.

## Count VI

**No Duties To Defend Or Indemnify Dr. Barto Under Pennsylvania Public Policy**

*The Medical Protective Company and Princeton Insurance Company v. Johnnie W. Barto, M.D.*

107.    MedPro and Princeton hereby incorporate the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

108.    All of the claims in the Underlying Action allege that Dr. Barto sexually abused Plaintiff-minors, all of whom were under the age of 18 at the time of the sexual abuse.

109.    It is against the public policy of the Commonwealth of Pennsylvania to afford insurance coverage for the sexual abuse of minors, and thus it is against the public policy of the Commonwealth of Pennsylvania to afford Dr. Barto any insurance coverage with respect to the claims set forth against him in the Underlying Action.

110.    Accordingly, the public policy of the Commonwealth of Pennsylvania precludes coverage for any defense of Dr. Barto against the claims set forth in the Underlying Action, as well as any indemnification of Dr. Barto for any judgment that may be entered against him in the Underlying Action.

WHEREFORE, MedPro and Princeton respectfully request that this Honorable Court enter judgment in their favor, and declare the following:

1.    MedPro and Princeton do not owe duties to defend Dr. Barto in the Underlying Action;

2.    MedPro and Princeton do not owe Dr. Barto duties to indemnify him against any judgment entered in the Underlying Action.

## Count VII

## No Coverage for Punitive Damages

*The Medical Protective Company and Princeton Insurance Company v. Laurel Pediatric Associates, Inc., Johnstown Pediatric Associates, Inc., and Johnnie W. Barto, M.D.*

111.    MedPro and Princeton hereby incorporate the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

112.    The MedPro-Barto Policies and the MedPro-Laurel Policies provide "this policy does not cover … [5]6 any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured."[1]

113.    The Damages Exclusions in the Princeton-Johnstown Policies and the Princeton-Laurel Policies provide that "this insurance does not apply to … punitive, exemplary … damages, or amounts which may be deemed uninsurable under the law to which this policy shall be constructed …."

114.    Accordingly,  none of the insurance policies that are the subject of this Complaint afford coverage for punitive damages or exemplary damages that may be awarded against Laurel, Johnstown Pediatric, and/or Dr. Barto in the Underlying Action.

WHEREFORE, MedPro and Princeton respectfully request that this Honorable Court enter judgment in their favor, and declare that MedPro and Princeton do not owe duties to indemnify Laurel, Johnstown Pediatric, and Dr. Barto for any award of punitive damages in the Underlying Action.

---

[1] This exclusion is numbered differently in the MedPro-Barto Policies than it is in the MedPro-Laurel Policies.  Aside from the numbering, the exclusions remain identical.  The number in the MedPro-Laurel Policies is reflected within the brackets, whereas the number in the MedPro-Barto Policies is reflected outside the brackets.

## Count VIII

### No Duties to Defend or Indemnify With Respect to Claims by Claimants Who Did Not Treat During an Effective Policy Period

*The Medical Protective Company v. Laurel Pediatric Associates, Inc., and Johnnie W. Barto, M.D.*

115.    MedPro hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

116.    The MedPro-Barto Policies and MedPro-Laurel Policies provide that MedPro "hereby agrees to DEFEND and PAY DAMAGES … in any claim for damages … based on professional services rendered or which should have been rendered, by the Insured or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession during the term of this policy."

117.    The MedPro-Barto Policies were in effect from April 1, 1989 to April 1, 1994, and from January 1, 2003 to January 1, 2006.

118.    The MedPro-Laurel Policies were in effect from January 1, 2003 through January 1, 2006.

119.    The MedPro-Barto Policies, therefore, do not afford any coverage to Dr. Barto with respect to claims made by Plaintiff-minors that do not allege treatment with him between April 1, 1989 and April 1, 1994, or between January 1, 2003 to January 1, 2006, as such Plaintiff-minors do not allege claims for damages based on professional services rendered or which should have been rendered in the practice of the Insured's profession during the term of the MedPro-Barto Policies.

120.    The MedPro-Laurel Policies, therefore, do not afford any coverage to Laurel or Dr. Barto with respect to claims made by Plaintiff-minors that do not allege treatment with

32

Dr. Barto at Laurel between January 1, 2003 to January 1, 2006, as such Plaintiff-minors do not allege claims for damages based on professional services rendered or which should have been rendered in the practice of the Insured's profession during the term of the MedPro-Laurel Policies.

WHEREFORE, MedPro respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    MedPro does not owe a duty to defend Laurel against claims in the Underlying Action from Plaintiffs who did not treat with Dr. Barto and Laurel between January 1, 2003 and January 1, 2006;

2.    MedPro does not owe Laurel any duty to indemnify it against any judgment entered in the Underlying Action with respect to claims from Plaintiffs who did not treat with Dr. Barto and Laurel between January 1, 2003 and January 1, 2006;

3.    MedPro does not owe a duty to defend Dr. Barto against claims in the Underlying Action from Plaintiffs who did not treat with Dr. Barto between April 1, 1990 and April 1, 1994, or between January 1, 2003 and January 1, 2006;

4.    MedPro does not owe Dr. Barto any duty to indemnify him against any judgment entered in the Underlying Action with respect to claims from Plaintiffs who did not treat with Dr. Barto between April 1, 1990 and April 1, 1994, or between January 1, 2003 and January 1, 2006.

## Count IX

### No Duties to Defend or Indemnify With Respect to Claims by Claimants Who Did Not Treat During an Effective Policy Period

*Princeton Insurance Company v. Laurel Pediatric Associates, Inc., Johnstown Pediatric Associates, Inc., and Johnnie W. Barto, M.D.*

121.     Princeton hereby incorporates the allegations of Paragraph 1 through Paragraph 72, above, as if set forth at length herein.

122.     Coverage M of the Princeton-Johnstown Polices and Princeton-Laurel Policies promise to pay amounts "you become obligated to pay as a result of injury to which this insurance applies" which "must be caused by a 'medical incident' arising out of your supplying or failure to supply professional services during the policy period stated on the Declarations of this policy."

123.     Coverage N of the Princeton-Johnstown Policies and the Princeton-Laurel Policies promise to pay amounts "you become legally obligated to pay a result of injury to which this insurance applies" which "must be caused by a 'medical incident' arising out of the supplying of or failure to supply professional services by you or anyone for whose professional acts or whose failure to act you are legally responsible during the policy period stated in the Declarations of this policy."

124.     The Princeton-Johnstown Policies were in effect from January 1, 1997 to June 1, 2000.

125.     The Princeton-Laurel Policies were in effect from June 1, 2000 to January 1, 2003.

126.     The Princeton-Johnstown Policies, therefore, do not afford coverage to Johnstown Pediatric and Dr. Barto with respect to claims made by Plaintiff-minors that do not allege treatment with Dr. Barto at Johnstown Pediatric between January 1, 1997 to June 1, 2000, as such

34

Plaintiff-minors do not allege injury caused by "medical incidents" that arise from the supplying or failure to supplying professional services during the term of the Princeton-Johnstown Policies.

127.    The Princeton-Laurel Policies, therefore, do not afford coverage to Laurel and Dr. Barto with respect to claims made by Plaintiff-minors that do not allege treatment with Dr. Barto at Laurel between June 1, 2000 to January 1, 2003, as such Plaintiff-minors do not allege injury caused by "medical incidents" that arise from the supplying or failure to supplying professional services during the term of the Princeton-Laurel Policies.

WHEREFORE, Princeton respectfully requests that this Honorable Court enter judgment in its favor, and declare the following:

1.    Princeton does not owe a duty to defend Johnstown Pediatric against claims in the Underlying Action from Plaintiffs who did not treat with Dr. Barto and Johnstown Pediatric between January 1, 1997 to June 1, 2000;

2.    Princeton does not owe Johnstown Pediatric a duty to indemnify it against any judgment entered in the Underlying Action with respect to claims from Plaintiffs who did not treat with Dr. Barto and Johnstown Pediatric between January 1, 1997 to June 1, 2000;

3.    Princeton does not owe a duty to defend Laurel against claims in the Underlying Action from Plaintiffs who did not treat with Dr. Barto and Laurel between June 1, 2000 to January 1, 2003;

4.    Princeton does not owe Laurel a duty to indemnify it against any judgment entered in the Underlying Action with respect to claims from Plaintiffs who did not treat with Dr. Barto and Laurel between June 1, 2000 to January 1, 2003;

5.      Princeton does not owe a duty to defend Dr. Barto against claims in the Underlying

Action from Plaintiffs who did not treat with Dr. Barto between January 1, 1997

and January 1, 2003;

6.      Princeton does not owe Dr. Barto a duty to indemnify him against any judgment

entered in the Underlying Action with respect to claims from Plaintiffs who did not

treat with Dr. Barto between January 1, 1997 and January 1, 2003.

**Count X**

**Number and Timing of Occurrences/Medical Incidents**

*The Medical Protective Company and Princeton Insurance Company v. Laurel Pediatric*
*Associates, Inc., Johnstown Pediatric Associates, Inc., and Johnnie W. Barto, M.D.*

128.    MedPro and Princeton hereby incorporate the allegations of Paragraph 1 through

Paragraph 72, above, as if set forth at length herein.

129.    The allegations made herein are made solely in the alternative to the allegations set

forth in Count I through Count IX, above.  Neither MedPro nor Princeton waive their allegations

that none of insurance policies referenced in this Complaint afford any coverage for the claims set

forth in the Underlying Action, including, but not limited to, their allegations that the Underlying

Action does not allege that any of the Defendants rendered or failure to render professional

services.

130.    The MedPro-Barto Policies and the MedPro-Laurel Policies provide that "the

Company's liability is limited as follows: Regardless of the number of (a) insureds or interests

named in this contract or any endorsement or (b) persons or organizations who sustain damages

or (c) claims made or suits brought on account of such injury or damage, or (d) the number of

policy years involved, the Company's liability for damages shall not exceed the stated amount for

any one occurrence and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate."

131.    The MedPro-Barto Policies and the MedPro-Laurel Policies provide that "for the purpose of determining the Company's liability, the following shall be considered as arising from one occurrence: a) all injury resulting from a series of acts or omissions in rendering professional services to one person and b) all injury arising out of continuous or repeated exposure to substantially the same general conditions."

132.    The MedPro-Barto Policies and MedPro-Laurel Policies limit MedPro's liability for any one occurrence, as well as its aggregate liability under any policy period, as set forth in Paragraphs 34-35, and 40, above.

133.    For purposes of Coverage M, the Princeton-Johnstown Policies and the Princeton-Laurel Policies define "medical incident" as "any act or failure to act (1) in the furnishing of the professional service by you, any employee of yours, or any person acting under your personal direction, control or supervision, or (2) in your service as a member of a formal accreditation, standards review or similar professional board or committee."

134.    For purposes of Coverage N, the Princeton-Johnstown Policies and the Princeton-Laurel Policies define "medical incident" as "any act or failure to act by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision."

135.    The Princeton-Johnstown Policies and Princeton-Laurel Policies provide that "[a]ny such failure to act, together with all related acts or failures to act in the furnishing of such services to any one person shall be considered one 'medical incident.'"

136.    The Princeton-Johnstown Policies and Princeton-Laurel Policies limit Princeton's liability for any one "medical incident," as well as its aggregate liability under any policy period, as set forth in Paragraphs 45-46 and 57-58, above.

137.    With respect to any particular Plaintiff-minor, all instances in which Dr. Barto sexually abused such Plaintiff-minor, regardless of the number of instances of such sexual abuse, qualify, collectively, as one occurrence under the MedPro-Barto Policies and the MedPro-Laurel Policies that occurred on the date upon which the first instance of sexual abuse occurred.

138.    With respect to any particular Plaintiff-minor, all instances in which Laurel failed to prevent Dr. Barto's sexual abuse, regardless of the number of instances of such sexual abuse, qualify, collectively, as one occurrence under the MedPro-Laurel Policies that occurred on the date upon which the first instance of sexual abuse occurred.

139.    Each such occurrence referenced in Paragraphs 137 and 138, above, is subject to the "one-occurrence limit" and the "aggregate limit" of the policy period in which it occurred.

140.    With respect to any particular Plaintiff-minor, all instances in which Dr. Barto sexually abused such Plaintiff-minor, regardless of the number of instances of such sexual abuse, qualify, collectively, as one "medical incident" under the Princeton-Johnstown Policies and Princeton-Laurel Policies that occurred on the date upon which the first instance of sexual abuse occurred.

141.    With respect to any particular Plaintiff-minor, all instances in which Johnstown Pediatric failed to prevent Dr. Barto's sexual abuse, regardless of the number of instances of such sexual abuse, qualify, collectively, as one "medical incident" under the Princeton-Johnstown Policies and Princeton-Laurel Policies that occurred on the date upon which the first instance of sexual abuse occurred.

142.    With respect to any particular Plaintiff-minor, all instances in which Laurel failed to prevent Dr. Barto's sexual abuse, regardless of the number of instances of such sexual abuse, qualify, collectively, as one "medical incident" under the Princeton-Laurel Policies that occurred on the date upon which the first instance of sexual abuse occurred.

143.    Each such "medical incident" referenced in Paragraphs 140 through 142, above, is subject to the "per-medical-incident limit" and the "aggregate limit" of the policy period in which it occurred.

WHEREFORE, and only in the event that this Court and/or the factfinder finds that any policy(ies) afford coverage with respect to the claims set forth in the Underlying Action, MedPro and Princeton, respectfully request that this Honorable Court enter judgment in their favor, and declare the following:

1.    All instances in which Dr. Barto sexually abused a particular individual qualify as a single occurrence under the MedPro-Barto Policies and the MedPro-Laurel Policies that occurred on the first date upon which Dr. Barto sexually abused such individual, and which is subject to the "one-occurrence limit" for the policy period encompassing the first date upon which Dr. Barto sexually abused such individual.

2.    All instances in which Laurel failed to prevent Dr. Barto's sexual abuse of a particular individual qualify as a single occurrence under the MedPro-Laurel Policies that occurred on the first date upon which Dr. Barto sexually abused such individual, and which is subject to the "one-occurrence limit" for the policy period encompassing the first date upon which Dr. Barto sexually abused such individual.

3.    All instances in which Dr. Barto sexually abused a particular individual qualify as a single "medical incident" under the Princeton-Johnstown Policies and the

Princeton-Laurel Policies that occurred on the first date upon which Dr. Barto sexually abused such individual, and which is subject to the "per-medical-incident limit" for the policy period encompassing the first date upon which Dr. Barto sexually abused such individual.

4.    All instances in which Laurel failed to prevent Dr. Barto's sexual abuse of a particular individual qualify as a single "medical incident" under the Princeton-Laurel Policies that occurred on the first date upon which Dr. Barto sexually abused such individual, and which is subject to the "per-medical-incident limit" for the policy period encompassing the first date upon which Dr. Barto sexually abused such individual.

5.    All instances in which Johnstown Pediatric failed to prevent Dr. Barto's sexual abuse of a particular individual qualify as a single "medical incident" under the Princeton-Johnstown Policies that occurred on the first date upon which Dr. Barto sexually abused such individual, and which is subject to the "per-medical-incident limit" for the policy period encompassing the first date upon which Dr. Barto sexually abused such individual.

**JURY TRIAL DEMANDED**                Respectfully submitted,

Houston Harbaugh, P.C.

 /s/ R. Brandon McCullough
R. Brandon McCullough, Esq.
Christopher M. Jacobs, Esq.
Jason H. Peck, Esq.

Houston Harbaugh, P.C
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222

(412) 281-5060