## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE MEDICAL PROTECTIVE CO.,    )
and PRINCETON INSURANCE CO.    )
     )
  Plaintiff/Counterclaim Defendant,   )
        v.       )
     )
LAUREL PEDIATRIC ASSOCIATES,    )
     )
  Defendant/Counterclaim Plaintiff.   )
     )

Civil No. 3:23-cv-00235
Judge Stephanie Haines

### OPINION

The Medical Protective Company ("MedPro") and the Princeton Insurance Company ("Princeton") filed this Complaint in civil action (ECF No. 1) to seek a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201 and 2202. MedPro and Princeton seek a declaration that they do not owe a duty to defend or a duty to indemnify Laurel Pediatric Associates ("Laurel") in an underlying lawsuit filed against Laurel by multiple minor-plaintiffs in the Court of Common Pleas of Cambria County, Pennsylvania ("Underlying Litigation").[1]

On September 29, 2023, MedPro and Princeton filed a Complaint for Declaratory Judgment (ECF No. 1). On December 4, 2023, Laurel filed an Answer to the Complaint and filed Counterclaims against MedPro and Princeton (ECF No. 18). Each of the parties claims the following:

<u>MedPro claims as to Laurel</u> (ECF No. 1):

**Count I**: No Duties to Defend and Indemnify Because Underlying Action Does Not Allege Professional Services

---

[1] A default judgment was entered against co-defendants Johnstown Pediatric Associates, Inc., and Johnnie W. Barto, M.D. on February 29, 2024 (ECF Nos. 40, 41). Count VI of the Complaint ("No Duties to Defend or Indemnify Dr. Barto under Pennsylvania Public Policy") is moot because it only pertains to Dr. Barto and it will not be addressed in this Memorandum Opinion.

**Count III**:  No Duties to Defend and Indemnify Because Exclusion for Damages in Consequence of Criminal Acts, Willful Torts, and/or Sexual Acts Applies
**Count V**:  No Duties to Defend and Indemnify to the Extent the MCARE Exclusion Applies
**Count VIII**:  No Duties to Defend or Indemnify with Respect to Claims by Claimants Who Did Not Treat during an Effective Policy Period

Princeton Claims as to Laurel (ECF No. 1):

**Count II**:  No Duties to Defend and Indemnify Because Underlying Action Does Not Allege Professional Services
**Count IV**:  No Duties to Defend and Indemnify Because Exclusion for Injury Resulting from the Performance of Criminal Acts Applies
**Count IX**:  No Duties to Defend or Indemnify with Respect to Claims by Claimants who did not Treat during an Effective Policy Period

MedPro *and* Princeton Claims as to Laurel (ECF No. 1):

**Count VII**: No Coverage for Punitive Damages
**Count X**:  Number and Timing of Occurrences/Medical Incidents

Laurel Counterclaims (ECF No. 18):

**Count I**:  Declaratory Relief as to MedPro.
**Count II**:  Declaratory Relief as to Princeton

On February 16, 2024, MedPro and Princeton filed a Motion for Judgment on the Pleadings (ECF No. 32) and a Brief in Support (ECF No. 33).  Laurel Pediatrics filed a Cross Motion for Partial Summary Judgment on the Pleadings (ECF No. 42) as well as a Brief in Opposition to the Motion for Judgment on the Pleadings (ECF No. 43).  MedPro and Princeton filed a Brief in Opposition to the Motion for Partial Summary Judgment (ECF No 44) and Laurel filed a Reply Brief in Opposition to the Motion for Judgment on the Pleadings and in Support for the Cross-Motion for Summary Judgment (ECF No. 45).  This matter is ripe for the Court's disposition.

## I.  Factual Background

### A.    The Underlying Litigation

The operative Fourth Amended Complaint of the Underlying Litigation (ECF No. 1-2, pp. 1-123 (Exhibit 1, part 1)) originally filed in Cambria County Court of Common Pleas has 45 plaintiffs ("Doe Plaintiffs")[2] suing (1) Laurel Pediatric Associates, Inc.; (2) Johnstown Pediatric Associates, Inc.; (3) Conemaugh Valley Memorial Hospital d/b/a Memorial Medical Center; (4) DLP Conemaugh Memorial Medical Center, LLC d/b/a Conemaugh Health System and Conemaugh Memorial Medical Center Lee Campus; (5) DLP Healthcare, LLC d/b/a Duke Lifepoint Healthcare; and (6) Dr. Johnnie W. Barto ("Dr. Barto"), M.D. (collectively "Underlying Litigation Defendants").  ECF No. 1-2, pp. 1-5.  The Underlying Litigation stems from Dr. Barto's treatment of a multitude of pediatric patients that occurred at various times between 1974 through 2018 at various healthcare facilities.  ECF No. 1-2, ¶ 58.

According to the Fourth Amended Complaint, Dr. Barto was a licensed pediatric physician between 1974 and 2018 and during those years he used his professional position to sexually abuse minor patients under the pretense and in conjunction with medical treatment.  ECF No. 1-2, ¶¶ 58, 60.  In March 2018, Dr. Barto was charged with multiple counts of aggravated indecent assault, indecent assault, corruption of minors, unlawful contact with a minor, and endangering the welfare of children.  ECF No. 1-2, ¶ 61.  On March 18, 2019, Dr. Barto received a criminal sentence of 79 to 158 years in state prison for his crimes.  ECF No. 1-2, ¶ 64.  The Fourth Amended Complaint states, "At all times relevant hereto, Barto was acting in the course and scope of his employment with Defendants Laurel Pediatric, Johnstown and/or Conemaugh and/or DLP as their agent, apparent agent, servant and/or employee …"  ECF No. 1-2, ¶ 65.

After Dr. Barto's criminal sentence, Doe Plaintiffs brought the claims below against the Underlying Litigation Defendants which included Laurel (ECF No. 1-2, pp. 92-148):

---

[2] As of the date of the Complaint in this case, there are fifty-nine (59) minor Jane and John Doe Underlying Litigation Plaintiffs.  ECF No. 1, § 17.

Count I:   Childhood Sexual Abuse and Vicarious Liability
Count II:  Negligence and Hiring/Retention
Count III: Negligent Supervision
Count V:  Negligent Misrepresentation
Count VII:  Intentional Infliction of Emotional Distress
Count IX:   Civil Conspiracy to Protect Reputation and Finances
Count X:   Medical Negligence
Count XI:   Assault (Dr. Barto only)
Count XII:  Battery (Dr. Barto only)
Count XIII: Violations of Title IX 20 U.S.C. §1681(a), et seq.  (Conemaugh and DLP only)
Count XIV: Corporate Negligence (AKA:  Negligent Credentialing)[3]

**B**.   **Princeton Policies**

The Princeton Policies with Laurel as the "Insured" cover the time-period from June 1, 2000, through January 1, 2003 (ECF Nos. 1-21, 1-22, 1-23).  The Princeton Policy in pertinent part reads:

I.   COVERAGE

Coverage N – Partnership, Association, or Corporation Professional Liability
We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies.  The injury must be caused by a **"medical incident"** arising out of the supplying of or failure to supply **professional services** by you or anyone for whose professional acts or whose failure to act you are legally responsible during the policy period stated on the Declarations of this policy.

**We have the right and duty to defend any "suit" against you seeking payment for injury….**

II.   EXCLUSIONS

(a) Injury resulting from your performance of a **criminal act**.

III.   PERSONS INSURED

(b) Under Partnership, Corporation, or Professional Association Professional Liability. The word "you" means the partnership, corporation, or professional association named in the schedule and any of its members with respect to the acts of others or their failure to act….

ECF No. 1-21, pp. 7-8 (emphasis added).

---

[3] The Count numbering is not sequential because certain counts have been stricken from the Underlying Complaint.

XI.     ADDITIONAL DEFINITIONS

**"medical incident"** means any act or failure to act

(b) Partnership, Association, or Corporation Professional Liability – **in the furnishing of professional services** by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision.

Any such act or failure to act, together with all related acts or failure to act in the furnishing of such services to any one person shall be considered one "medical incident"

ECF No. 1-21, pp. 9 (emphasis added).

This insurance does not apply to fines, penalties, taxes, or **punitive**, exemplary, trebled, or multiplied damages... ECF No. 1-21, p. 6 ("Damages Exclusion") (emphasis added).

The three policies covering Laurel from 2000 to 2003 are substantially the same.

**C.      MedPro Policies**

The MedPro Policies with Laurel as the "Insured" cover the time-period from January 1, 2003, to January 1, 2006 (ECF Nos. 1-14, 1-15, 1-16).  The MedPro Policy in pertinent part reads:

... the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured...

A IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON **PROFESSIONAL SERVICES** RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION DURING THE TERM OF THIS POLICY; EXCEPT this policy does not cover ...

2. payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or **sexual acts**;

6. any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured.

ECF No. 1-14 p. 1 (emphasis added).

The following exclusion was added to the policy:

Payment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to defend and pay damages pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto…

Furthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions hereto.

ECF No. 1-14, p. 4. The three policies covering Laurel from 2003 to 2006 are substantially the same.

## II. Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains ... and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (citing *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)). "In considering a motion for judgment on the pleadings, a court must accept all allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable

inferences in favor of the non-moving party." *Id.* at 417-18; *see also Allah v. Al-Hafeez,* 226 F.3d 247, 249 (3d Cir. 2000).

## III.   Discussion

There are three Princeton Policies (ECF Nos. 1-21, 1-22, 1-23), and three MedPro Policies (ECF Nos. 1-14, 1-15, 1-16) that were issued to Laurel as the Insured covering time periods June 2000, through January 2003, and January 2003, through January 2006, respectively.  To the extent that this issue becomes pertinent to the case, Princeton and MedPro would only be liable to defend and indemnify those cases in which the facts occurred during the times that the Princeton or MedPro Insurance Policies were in effect.  "An 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *City of Erie, Pa. v. Guar. Nat. Ins. Co.,* 109 F.3d 156, 158–59 (3d Cir. 1997) (quoting *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535 n. 3 (1978).  The language of the Policies indicate that the Policies are occurrence-based policies and the time periods covered by the policies are not in dispute. *See e.g.,* "IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERDERED… DURING THE TERM OF THIS POLICY"  ECF No. 1-14, p. 1 (MedPro Policy dated 1/1/2003-1/1/2004); "We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury…arising out of your supplying… professional services during the policy period stated on the Declarations of this policy."  ECF No. 1-21, p. 7 (Princeton Policy dated 6/1/2000).  There is no ambiguity in the language and reading the contract plainly this appears to be the parties' intent.  Counts VIII and IX ("No Duties to Defend or Indemnify with Respect to Claims by Claimants who did not Treat during an Effective Policy

Period") of MedPro and Princeton's Motion for Judgment on the Pleadings is granted as to these Counts.

Related to the Court's holding as to Counts VIII and IX is Count X of Plaintiff's Motion for Judgment on the Pleadings, the number and timing of occurrences. Count X states that the Policies limit the liability of the Insurers for any one occurrence, as well as its aggregate liability under any policy period. ECF No. 1, § 132. The Princeton Policy reads,

> The total limit of our liability during the policy year for all injury to which this insurance applies shall not exceed the limit of liability stated in the schedule as aggregate.

> Subject to the provision above regarding aggregate, the total limit of our liability during the policy year for all injury to which this insurance applies in connection with any one 'medical incident' shall not exceed the limit of liability stated in the schedule as 'each medical incident.'

> [a]ny such failure to act, together with all related acts or failures to act in the furnishing of such services to any one person shall be considered one 'medical incident.'

ECF No. 1-21, pp. 8, 9. The MedPro Policy reads, "Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one occurrence: a) all injury resulting from a series of acts or omissions in rendering professional services to one person and b) all injury arising out of continuous or repeated exposure to substantially the same general conditions. ECF No. 1-14, p. 1. Recognizing that the Policies are occurrence-based policies and interpreting a plain reading of the language, this Court will grant the Motion for Judgment on the Pleadings as to Count X of the Complaint.

Princeton and MedPro (collectively "Plaintiffs") allege that Laurel cannot meet its burden of proving the claims against it in the Underlying Litigation meet the requirements of the insuring agreements for coverage. Plaintiffs' Motion for Judgment on the Pleadings is based on two primary positions, (1) the Underlying Litigation does not allege any conduct involving "medical

skills" associated with specialized training. Sexual abuse and failure to prevent sexual abuse does not constitute "professional services"; and (2) exclusions in the insurance policies bar coverage for damages that are a consequence of a criminal act, willful tort, and/or sexual acts. ECF No. 32, p. 2.

The Court will review the provisions of the Policies in the context of the Underlying Litigation to determine whether Princeton or MedPro is liable to defend and/or indemnify Laurel. "The interpretation of an insurance policy is a question of law..." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (2006) (citing *401 Fourth Street v. Investors Ins. Co.*, 879 A.2d 166, 170 (2005)). "Courts may therefore dispose of such cases on motions for judgment on the pleadings where the sole issue is the interpretation of the policy." *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020). Of specific importance are the claims alleged against Laurel in the Underlying Litigation. "In determining whether the underlying litigation falls within the scope of the insurer's duties to defend or indemnify, a court must examine only those factual allegations made within the "four corners" of the underlying complaint." *Id.* at 739. The duties cannot be triggered by allegations outside the complaint. *See Kvaerner*, 908 A.2d at 896 ("[A]n insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured.... [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself.").

There are eight counts in the Fourth Amended Complaint where Laurel is named as a defendant (ECF No. 1-2, pp. 92-148). These claims against Laurel stem from the illegal conduct of Dr. Barto. Even so, Laurel asserts the claims against them in the Underlying Litigation are separate from the intentional tort claims against Dr. Barto. The underlying plaintiffs assert negligence and tort claims against Laurel which are "founded upon Laurel's employees' alleged

failure to render proper medical treatment and otherwise deviating from their duties of care *vis-a-vis* the minor plaintiffs." ECF No. 43, p. 1.

Under Pennsylvania law the interpretation of an insurance policy is a matter of law which the Court may decide. *See Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007)). The goal is to ascertain the intent of the parties as manifested by the policy terms. *See Netherlands Ins. Co. v. Butler Area Sch. Dist.,* 256 F. Supp. 3d 600, 611 (W.D. Pa. 2017) ("A policy must be read as a whole and its meaning construed according to its plain language.") (quoting *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011)). If the terms are clear and unambiguous, courts are required to give effect to those terms. *See Netherlands*, 256, F. Supp at 611. But if the terms are ambiguous, they must be construed for the insured and against the insurer. *See id.* Terms in an insurance policy are ambiguous if they are reasonably susceptible to different constructions, obscure in meaning through indefiniteness of expression, or have a double meaning. *See id.*

Therefore, the Court must consult the four corners of the Underlying Litigation Complaint to determine whether its factual allegations trigger coverage under the policy. *See Hanover Ins. Co. v. Urb. Outfitters, Inc.,* 806 F.3d 761, 765 (3d Cir. 2015). To interpret the terms of insurance policies for a duty to defend or indemnify, the duty to defend is broader than the duty to indemnify. *See USAA Cas. Ins. Co. v. Bateman*, Civ. A. No. 07-3700, 2008 WL 4761718, at *4 (E.D. Pa. Oct. 30, 2008). When an underlying complaint makes at least one allegation that falls within the scope of the policy's coverage, the duty to defend is triggered, even where an insured is ultimately found to be not liable. *See Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then

coverage is triggered and the insurer has a duty to defend until such time that the claim is confined

to a recovery that the policy does not cover.").

### A. Duty to Indemnify and Defend under Princeton's Policies

Princeton's Motion for Judgment on the Pleadings seeks judgment in its favor excluding a

duty to indemnify and defend Laurel in the Underlying Litigation for the following reasons. First,

Princeton states that because the Underlying Litigation involves allegations of sexual abuse,

molestation, and other sexual misconduct, Princeton is not liable to indemnify or defend because

sexual misconduct is not a "medical incident" arising out of professional services. Second, the

Princeton Policies exclude coverage for criminal acts. Laurel in its Cross-Motion for Summary

Judgment seeks enforcement of coverage under Princeton's insurance policies which includes a

duty to defend and indemnify Laurel in litigation. Laurel counters that allegations against it in the

Underlying Litigation are not integral to Dr. Barto's criminal acts but instead assert liability related

to its professional services. Laurel also argues that if a term of the contract (i.e., professional

services) is ambiguous, that provision of the policy should be found for the insured. ECF No. 43,

p. 9 (citing *Slate Const. Corp. v. Bituminous Cas. Corp.*, 323 A.2d 141, 143-44 (Pa. Super. 1974).

Therefore, Laurel claims that it is not excluded from coverage in the Princeton Policies.

Laurel points to the medical negligence claims against them that they proffer are separate

from the sexual abuse claims. Laurel states, the underlying plaintiffs "assert numerous negligence

claims against Laurel, including negligent hiring and retention (Count II), negligent supervision

(Count III), negligent misrepresentation (Count V), medical negligence (Count X), and corporate

negligence/negligent credentialing (Count XIV)." ECF No. 43, p. 3; Fourth Amended Complaint

(ECF No. 1-2), generally. The Certificate of Merit reads, "[T]here is a basis to conclude that the

care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work

that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause of bringing about the harm." ECF No. 43, p. 3. Laurel provides several examples of the underlying allegations against it that support its position. ECF No. 43, pp. 3-4. For example,

> Laurel['s]...failure to implement and enforce adequate policies as well as their inactivity in responding to parents' reported concerns breached their duties to ensure: (1) the maintenance of a safe facility, (2) the selection and retention of competent physicians, (3) proper oversight over physicians' on-site patient care, and (4) the formulation and adoption of rules to ensure quality care for the patients. Each of these failures were 'acts,' and 'omissions' by licensed medical professionals, that required an exercise of medical judgment and observance of their special duty of care to each of the named Plaintiffs, which they breached.

ECF No. 1-2, ¶ 558.

These allegations in the Fourth Amended Complaint are distinct from the sexual misconduct allegations against Dr. Barto. In other words, while Dr. Barto's criminal activity brought Laurel's negligence to light, Laurel's negligence was occurring, nonetheless. In the Court's review of the language of the Princeton Policies, and the claims against Laurel in the Underlying Litigation it finds that the claims relate to the 'medical incident' of supplying or failing to provide professional services, and therefore, the claims fall within the purview of the Policies.[4]

A "medical incident" as defined in the Princeton Policies means any act or failure to act in the furnishing of professional services by Laurel or any person acting under Laurel's personal direction, control, or supervision. Its definition is broader than the term might suggest. The negligence claims against Laurel are covered because the underlying allegations are that Laurel failed to properly carry out its professional services maintaining of a safe facility, selecting and retaining competent physicians, and properly overseeing its physicians' on-site patient care. These

---

[4] Count I of the Underlying Litigation is "Childhood Sexual Abuse and Vicarious Liability." The Court finds Plaintiffs are not liable for defense and indemnification for Count I because it is unrelated to a medical incident or professional services as specified in the Policies for coverage.

claims, while discovered in the context of a sexual abuse crime, are stand-alone claims and not criminal in and of themselves. In other words, the medical incident of negligently failing to provide professional services is within the terms of the Policies. The key wording in the Princeton Policies is the relationship of the term "medical incident" to the term "professional services," which broadens the meaning of medical incident to activities other than the practice of medicine thereby broadening the coverage of the Policies to those acts performed by all professional employees of Laurel.

Princeton counters that Laurel is reading outside the intent of the professional services policy. Princeton states that the Policies intend to only cover injury which must be tied to professional services, not injury that happened as a consequence of sexual abuse. ECF No. 44, p. 3. We agree with Princeton's interpretation of its Policy that the injury must be tied to the professional services, and we find that the allegations against Laurel are for negligent performance of its professional services. Defendants rely on *Physicians Ins. Co. v. Pistone,* 726 A.2d 339 (Pa. 1999),[5] which held that the term "professional services" is something more than an act flowing from mere employment. "The act or service must be such as exacts use or application of special leaning or attainments of some kind … [it] implies intellectual skill…. A 'professional' act or service is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the skill involved is predominantly mental or intellectual rather than physical or manual…." *Id.* at 341.

---

[5] The Court takes emphatic note that the language in the insuring agreement at issue in *Pistone* uses the term "professional ***health care*** services" which by its own wording is more specifically related to services of health care professionals and the focus of the opinion is the coverage of the doctor who performed the deviant sexual acts. *See Pistone,* 726 A.2d at 340-41(emphasis added). This case is distinguished from *Pistone* because the term used in the Policies at issue is simply "professional services" as it relates to claims against the health care institution, Laurel.

The Court finds that it is a specialized professional service to maintain a safe medical facility, select and retain competent doctors, and to oversee such doctors. A person of an ordinary, non-medical background, not specially trained in medical services would not be competent to carry out such duties. In addition, it is reasonable to find the act of properly maintaining a safe facility with qualified, ethical doctors would be the intent of the drafters of an insurance policy. This seems especially apparent when the Policy includes as persons insured, the company itself and any member, partner, officer, director, stockholder, or employee and any person acting under the company's personal directions, control, or supervision. The Policy was not intended to only cover medical practitioners; it includes coverage for those who support medical practitioners whose professional duties are not direct caretaking of patients.

In *Chubb Nat'l Ins. Co. v. D'Cunha*, the Court evaluated the insurability of state court claims against two doctors and came to a similar conclusion. No. 2:22-CV-1042-NR, 2023 WL 4866101 (W.D. Pa. July 31, 2023). The *Chubb* Court found that plaintiffs' restrictive construction that "professional medical services" means only "the provision of medical treatment or the failure to provide such treatment" is not appropriate in light of the policy's language; the policy specifically labels itself as "professional liability insurance,"[6] rather than "medical malpractice insurance." *Id.* at 6. Under the policy in *Chubb*, a "medical incident" can include an act or omission: (2) in the service by the insured as a member of a formal accreditation, standards review, ethics or similar professional board or committee, including non-employed committee members. *See id.* at 7. *Chubb* is representative of the fact that "medical incident" can include non-medical acts of the medical institution. In this case, the Policies' language is even broader covering "'medical incident' arising out of the supplying of or failure to supply professional services by you

---

[6] The Princeton Policies are labelled as Professional Liability Insurance. The MedPro Policies has no label at all.

or anyone for whose professional acts or whose failure to act you are legally responsible," (Princeton Policies) and

> 'medical incident' means any act or failure to act

(c) Partnership, Association, or Corporation Professional Liability – in the furnishing of professional services by (1) any member, partner, officer, director, stockholder, or employee of yours or (2) any person acting under your personal direction, control, or supervision. (MedPro Policies).

Finally, in a case analogous to this, *Princeton Ins. Co. v. Kosoy*, No. CIV. A. 98-4985, 1999 WL 79055 (E.D. Pa. Feb. 9, 1999), *aff'd*, 281 F.3d 223 (3d Cir. 2001), in which the underlying complaint alleged claims for negligence, fraud, and breach of contract arising solely out of non-medical functions of billing practices, the Court found "[t]here is no claim that conceivably could be deemed to be a 'medical incident' **as the term is defined in the policy.**" *Id.* at *3 (emphasis added). Similar to the Policies, the coverage provisions of the *Kosoy* policy stated that the injuries covered by the policy must be caused by a "medical incident" arising out of the insured's "supplying or failure to supply professional services." *Id.* But unlike the Policies, the *Kosoy* policy defined "medical incident" as any act or failure to act in the furnishing of ***professional medical services.*** This language clearly and unambiguously limits coverage to the provision of medical treatment or the failure to provide such treatment. *See id.* The Court in *Kosoy* found that Dr. Kosoy's billing practices fell outside the definition of professional medical services as required by the policy and was thus not covered under the Princeton policy.

In summary, Plaintiffs' argument is off-point in that they argue that sexual abuse occurring during medical treatment does not qualify as the rendering of "professional services."[7] But for

---

[7] Plaintiffs also rely on *Aria Health v. Med. Care Availability & Reduction of Error Fund*, 88 A.3d 336 (Pa. Commw. Ct. 2014) for support of its argument against coverage for Laurel. The Court distinguishes *Aria* from this case because *Aria* discusses coverage of the MCARE fund which may apply to litigation of ***medical professional liability.*** The *Aria* Court did not find the claim of negligent credentialing to be covered. *See id.* at 346. "[T]he critical question is whether the claim asserts a failure to exercise professionally medically related judgment in providing healthcare." *Id.*

Laurel, the medical institution, the underlying claims against it are not for sexual abuse but for a negligence in carrying out its professional duties.  In the insurance context, the Third Circuit has defined "professional services" as an act or service "arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill.... [T]he relevant consideration is not the title or character of the party performing the act, but the act itself." *Visiting Nurse Ass'n. v. St. Paul Fire & Marine Ins. Co.,* 65 F.3d 1097, 1101 (3d Cir.1995).  Professional services are not held to be strictly medical services, but services performed by professionals.  The Court will deny Princeton's Motion for Judgment on the Pleadings as to Count II.

### B.  Duty to Indemnify and Defend under MedPro's Policies

The issues are the same as to the MedPro Policies as in the Princeton Policies, and the Court refers to the discussion above as it applies to the MedPro Policies. The Court nonetheless will perform an analysis of the specific language in the MedPro Policies.  The MedPro Policies state that it will defend and pay damages on behalf of Laurel in any claim for damages based on professional services rendered by the insured or based on professional services whose acts Laurel is legally responsible for.  Unlike Princeton, MedPro does not define professional services,[8] but the language of the Policies indicates that "professional services" are services rendered "in the practice of the insured's profession...."  Taking the language plainly, the Court concludes that, like Princeton, professional services refer to the specific expertise of the persons who are legally

---

at 345. *Aria* is not instructive for this case because the Court found that professional services as to Laurel need not be medical to be covered under the Policies.  Plaintiffs also cite *Connolly v. Com., Med. Pro. Liab. Catastrophe Loss Fund*, 739 A.2d 104 (1999), which is another case based on statutory law, the Medical Professional Liability Catastrophe Loss Fund, which may be distinguished because the terms of the statute differ from the Policies.

[8] The Court notes the argument "that where a professional liability policy does not contain its own definition of 'professional services,' courts sitting in Pennsylvania have found that the phrase can well be regarded as ambiguous and, therefore, must be construed against the insurer." ECF No. 43, p. 12 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1056 (Pa. Super 1992)).

covered by Laurel.  For example, a doctor's professional services relate to the practice of medicine while the secretary's professional services relate to the administration of office functions.

Laurel maintains the same argument here as with Princeton, that the Underlying Litigation against it are claims of negligence separate and aside from Dr. Barto's actions.  The claims of negligence are in the discharge of the duties of professional services by its employees, whatever position, in the context of the medical business.  Like Princeton's Policies, the MedPro Policies cover both Laurel itself and its employees.  The Court, as above, finds that MedPro's Policies cover the Underlying Litigation claims of negligence as it pertains to Laurel's (employees) rendering of professional services.  The Court will deny MedPro's Motion for Judgment on the Pleadings as to Count I.

### a. The But-For Relationship Exclusion

Plaintiffs argue that the Policies contain exclusions of liability for criminal acts.  The Princeton Policies exclude "[i]njury resulting from your performance of a criminal act."  Where "your" refers to both Laurel, including its employees and Dr. Barto.  The MedPro Policies do not cover "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual acts.  This Court addressed a similar argument in *Conemaugh Health Sys., Inc. v. ProSelect Ins. Co.*, 2023 WL 4540997, at *6-10 (W.D. Pa., July 14, 2023).  In that case, the Court focused on policy language that provided an exclusion for liability *arising out of* an illegal sexual act.  The Court stated, "The phrase 'arising out of' has been equated with 'but for' causation." *Tuscarora*, 889 A.2d at 563; *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 155 (3d Cir. 2017); *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (1967); *F. Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989).  "But for causation, i.e., a cause and result relationship, is enough to satisfy [a]

provision of the policy." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (1961). The Court finds that the exclusion language used in the Plaintiffs' Policies also used "but-for" language. In Princeton Policies, coverage is excluded for injury *resulting from* a criminal act; and in MedPro Policies indemnity coverage is excluded for damages that are *in consequence of* the performance of a criminal act or willful tort or sexual acts.

While the Court acknowledges its finding that the underlying allegations against Laurel are negligence for professional services that would be covered under the Policies, it finds that the exclusions of coverage in the Policies apply. As it did in *Conemaugh Health Sys., Inc. v. ProSelect Ins. Co.*, No. 3:21-CV-00190, 2023 WL 4540997, at *1 (W.D. Pa. July 14, 2023), the Court finds that there is a causal, "but for" relationship, between the factual allegations in the Underlying Litigation and the claims against Laurel. *See Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (1999) ("[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead, it is necessary to look at the factual allegations contained in the complaint."); *Kvaerner*, 908 A.2d at 896 ("[A]n insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured.... [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself."); *see cf Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, No. 22-2565, 2023 WL 6172886, at *4 (3d Cir. Sept. 22, 2023) ("Because the allegations in the complaint do not forge a strong enough link between the use of the school bus and K.M.'s injuries, we conclude the District Court erred in finding National had a duty to defend Brimar and the District.")

There is a causal connection between the allegations against Laurel and the sexual misconduct of Dr. Barto. But for the sexual abuse and other deviant behaviors for which Dr. Barto was convicted, Laurel would not have been sued for its negligent acts. In other words, the damages

of the Underlying Litigation are a consequence or a result of Dr. Barto's sexual misconduct. Without the damages caused by Dr. Barto's actions, there would be no damages and therefore, no claims against Laurel for its negligent professional services.

As in *ProSelect*, this Court once again will use as instructive the Pennsylvania Supreme Court case of *Madison Constr. Company v. Harleysville Mutual Ins. Co.*, 735 A.2d 100 (1999). In the underlying action in *Madison*, the insured's employee alleged that after inhaling hazardous fumes on the insured's construction site, he passed out and fell into a pit, hurting himself badly in the process. *See id.* at 102. The employee sued for negligence, and the insurer disclaimed coverage, citing a policy exclusion for bodily injury "arising out of" the release of pollutants. *See id.* at 102-03. The insured argued that the "underlying lawsuit state[d] claims for acts of alleged negligence, such as failure to warn, which do not arise out of" the release of the pollutant. *See id.* at 105-06. The Pennsylvania Supreme Court disagreed concluding that "regardless of the language chosen by the [underlying] plaintiff, the plaintiff's "injuries 'arose out of' the release of the irritating fumes at the construction site." *Id.* at 110. Here, Laurel is arguing, just like the insured in *Madison*, that the underlying action arises out of its "negligence." But just like the pollutant release was unavoidably a basis of the underlying plaintiff's personal injury claim in *Madison*, Dr. Barto's criminal misconduct is unavoidably the basis of the Underlying Doe Plaintiffs' claims.

*Leithbridge* reveals this point using the basic elements of negligence. "To demonstrate negligence, a plaintiff must establish [1] that the defendant owed a duty of care to the plaintiff, [2] that duty was breached, [3] the breach resulted in the plaintiff's injury, and [4] the plaintiff suffered an actual loss or damages." 464 F. Supp. 3d 734, 740 (E.D. Pa. 2020) (citing *Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund*, 73 A.3d 543, 563 (2013); *Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (2009)). In the Underlying Litigation, the sexual misconduct is

crucial to the claim causing the injury at element [3] and causing the actual loss or damage at [4]. Without the sexual misconduct, the Underlying Doe Plaintiffs have no negligence claim. Underlying Doe Plaintiffs' negligence claim, therefore, is unavoidably "based on" the sexual misconduct.

In assessing whether an underlying negligence claim results from a particular event for insurance purposes, the law in Pennsylvania is that the event may be independent of the alleged breach of duty. *See Madison*, 735 A.2d at 109–10; *Leithbridge*, 464 F. Supp. 3d at 740. The allegations of negligent hiring, negligent misrepresentation, negligent supervision, and medical negligence could have not existed without first Dr. Barto's illegal actions. Therefore, the claims against Laurel result from, or are consequent to Dr. Barto's the sexual misconduct. The Court finds the exclusions in the Princeton and MedPro Policies apply and therefore, the insurance companies' exclusions apply as written.

Laurel seeks to distinguish the language in the Policies from cases that have decided the similar exclusions applied. Laurel says the "resulting from" and "consequence of" language used in the Policies is more akin to "caused by" and not "arising from." The Court is not persuaded by this argument and finds caselaw support for "but for causation" is implied with the terms "as a result of" and "consequent to*." See Maryland Cas. Co. v. Regis Ins. Co.*, No. CIV.A. 96-CV-1790, 1997 WL 164268, at *4 (E.D. Pa. Apr. 9, 1997); *Dillon Gage Inc. of Dallas v. Certain Underwriters at Lloyd's*, 440 F. Supp. 3d 587, 591 (N.D. Tex. 2020), *aff'd sub nom. Dillon Gage, Inc. of Dallas v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 26 F.4th 323 (5th Cir. 2022) ("The Court believes a proper interpretation of "consequent upon" is "a consequence of" or "because of"—in other words: but-for causation.")

In a close reading of the exclusionary language, the Court finds further support that Laurel's coverage is excluded by the Policies' language. The exact wording of the Policies is:

(c) Injury **resulting from** your performance of a criminal act. The word "you" means each individual named in the schedule and the partnership, corporation, or professional association named in the schedule and any of its members…

ECF No. 1-21, pp. 7-8 (Princeton).

this policy does not cover …

2. payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are **in consequence of** the performance of a criminal act or willful tort or sexual acts;

ECF No. 1-14, p. 1 (MedPro). As to Princeton, the word "you" includes Laurel employees, so coverage is excluded when the injury of the claim results from *any employee* of Laurel's performance of a criminal act. Because Dr. Barto was an employee of Laurel, the resulting exclusion of coverage is clear. Even if the Court were to take Laurel's interpretation of "resulting from" to be akin to "caused by," ECF No. 43, p. 26, the result is the same. Coverage is excluded as it pertains to Laurel in the Princeton Policies.

As to MedPro's Policies which exclude coverage in any claim for damages that are in consequence of a criminal sexual act, the Policies' language covers Laurel or any other person for whose acts the Insured is legally responsible. Thus, the exclusion states it will not cover damages in consequence of criminal sexual acts for any person for whom Laurel is legally responsible, such as Dr.Barto.

### *Duty to Defend*

Laurel argues that even if Plaintiffs' exclusions for criminal/sexual acts are found to be enforceable as to indemnification, the Insurers are still liable to defend Laurel based on specific language in the Policies. The Princeton Policies contain the following language in the I Coverage

section: "We have the right and duty to defend any 'suit' against you seeking payment for injury…." Section I adds, "We will investigate any claim or 'suit' as we feel appropriate. We will settle any claim or 'suit' as we deem appropriate." ECF No. 1-21, p. 7. The following Section II enumerates exclusions, including the exclusion for injury resulting from the performance of a criminal act. The Princeton Policy language cited does not persuade the Court that the exclusion does not apply for both indemnification and the broader duty to defend. First, the language cited is in the Coverage Section and as such it is referring to cases that are deemed to be appropriately covered and thus are entitled to a defense by Princeton. Section II provides the exclusions from coverage and there is no indication that the exclusions partially apply to indemnification. It is the Court's determination that Princeton is not obligated to Laurel under its Policies to indemnify or defend Laurel in the Underlying Litigation.

The MedPro Policies exclude "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual acts." The Court has found that the insuring agreement applied to Laurel as to the negligence claims for Laurel's professional services. *See State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cr. 2009) ("Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."). But the Court also finds that the exclusion clause allows MedPro to avoid liability for payment of damages if the damages are in consequence of a criminal act. But the exclusion language is clear and unambiguous that MedPro will continue to defend the insured under such

circumstances.  The Court finds that MedPro had no duty to indemnify Laurel but does maintain the duty to defend Laurel in the Underlying Litigation.

The Court will grant Princeton's Motion for Judgment on the Pleadings as it pertains to Count IV.  The Court will grant in part and deny in part MedPro's Motion for Judgment on the Pleadings as it pertains to Count III.

### b.  MedPro MCARE Exclusion

According to the Complaint, Laurel gave notice of the Underlying Litigation to the Medical Care Availability and Reduction of Error Fund ("MCARE") and sought defense and indemnification for the claims set forth against it.  ECF No. 1, p. 7.  MCARE advised Laurel "it would be assigning counsel pursuant to § 1303.715 '[t]o the extent the underlying Fourth Amended Complaint could arguably be construed as alleging a violation of medical standards applicable to the chaperoning of pediatric examinations.'"  *Id.*  MCARE denied defense and indemnification for any claims that were not alleging a "medical professional liability claim."  In Count V of MedPro's Motion for Judgment on the Pleadings, it asserts that it has no duty to Defend and Indemnify to the extent the MCARE Exclusion Applies.  The MCARE exclusion was added to MedPro Policies covering January 1, 2003, to January 1, 2006.  It reads

PENNSYLVANIA SECTION 715 ENDORSEMENT

The following exclusion is added to the policy:
Payment of damages in any claim for damages on which the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund is required to defend and pay damages pursuant to 40 P.S. § 1303,715, as well as any amendment or extensions thereto.

The following sentence is added to Paragraph B:
Furthermore, the Company shall not be obligated to defend any claim after the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Fund has assumed the Insured's defense pursuant to 40 P.S. § 1303.715, as well as any amendments or extensions thereto.

ECF No. 1, p. 12; ECF No. 1-13, p. 4.  The Court finds that to the extent that the MCARE Fund assumes responsibility to defend and indemnify Laurel on any claims in the Underlying Litigation, MedPro's exclusion applies, and it will not be liable to indemnify or defend Laurel for the same claims.

### C.  Punitive Damages

The Court has determined that neither Princeton nor MedPro are responsible to indemnify Laurel in the Underlying Litigation.  Count VII of Plaintiffs' Motion for Judgment on the Pleadings asks the Court to find that there is No Coverage for Punitive Damages.  ECF No. 1, p. 31.  The Princeton Policies contain the provision, "This insurance does not apply to fines, penalties, taxes, or **punitive**, exemplary, trebled, or multiplied **damages**."  ECF No. 1-21, p. 6 (emphasis added).  The MedPro Policies provide, "[T]his policy does not cover... any **punitive damages** or damages over and above actual compensatory damages which may be assessed against the Insured."  ECF No. 1-14, p. 1 (emphasis added).  The language of the Policies is unambiguous, and the Court finds that neither Princeton nor MedPro is responsible for payment of punitive damages in the Underlying Litigation.

## IV.    Conclusion

For the reasons stated above, Plaintiffs' Motion for Judgment on the Pleadings will be GRANTED in part and DENIED in part and Defendant Laurel's Cross Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  The Court enters Declaratory Judgment in favor of Princeton.  Princeton is not required to defend or indemnify Laurel in the Underlying Litigation.  The Court enters Declaratory Judgment in part as to MedPro.  It is not required to indemnify Laurel but is liable to defend Laurel as to certain claims.

An appropriate Order will be entered.

Dated: September 30, 2024

Stephanie L. Haines
United States District Court Judge